_____

No. 95-4216
_____

United States of America,      *
                               *
          Appellee,            *
                               *
     v.                        *
                               *
Barry Keith Wilson,            *
                               *
          Appellant.           *

                                   Appeals from the United States
                                   District Court for the
                                   Eastern District of Missouri.

_____

No. 95-4217
_____

United States of America,      *
                               *
          Appellee,            *
                               *
     v.                        *
                               *
Frederick Fernando McGee,      *
                               *
          Appellant.           *

_____

          Submitted:  May 14, 1996

            Filed:  January 2, 1997
_____

Before MORRIS SHEPPARD ARNOLD, Circuit Judge, and HEANEY and HENLEY,
     Senior Circuit Judges.

_____

HENLEY, Senior Circuit Judge.


     Barry Keith Wilson and Frederick Fernando McGee were convicted of
conspiracy to possess cocaine base with intent to distribute in violation
of 21 U.S.C. § 846.  McGee was also convicted of assault

on a federal officer with a deadly weapon under 18 U.S.C. § 111. Wilson and McGee have filed separate briefs on appeal and raise several separate issues. After consideration of each claim raised, we affirm the judgment of the district court as to each defendant.[1]

## BACKGROUND

On March 8, 1995, two DEA agents on drug interdiction patrol at St. Louis' Lambert Airport observed two persons later identified as Wilson and McGee standing in line at an airport ticket counter. The two men appeared nervous and were looking around. The agents noticed that McGee had braided hair and a gold tooth. The agents saw Wilson count out cash and hand it to the ticket agent and also saw McGee write something on a piece of paper and hand it to the ticket agent.

After McGee and Wilson left the ticket counter, the DEA agents questioned the ticket agent and learned that Wilson and McGee had paid in cash for a round trip ticket for the next day from Phoenix to St. Louis in the name of Laura Dugan. The piece of paper McGee handed to the ticket agent gave the name Freddie Lakes as the name of the purchaser of the ticket.

Because they were suspicious that in the circumstances this cash purchase of a plane ticket suggested a drug transaction, the next day drug task force agents waited at the gate where Dugan's plane was to arrive. They observed her as she deplaned and walked to the baggage area. They noted that she was looking around and appeared nervous.

As she left the terminal, one of the agents approached Dugan and identified himself. He questioned her and then asked if she would agree to be searched. Dugan agreed and a search of her

---

[1]The Honorable Edward L. Filippine, United States Senior District Judge for the Eastern District of Missouri.

person revealed a package containing approximately half a kilogram of cocaine taped to her waist under her clothing. Dugan agreed to cooperate and gave a statement about her trip to St. Louis.

She stated that her real name was not Laura Dugan but Kirsten Mactas and that she was delivering the drugs for a man named Big John. Later it was learned that her real name was not Kirsten Mactas but Tara Deatsch-Wright. Deatsch-Wright stated that she was to deliver the cocaine to a man she didn't know but whose name was Fred and who would have his hair in braids and a gold tooth. She was to meet Fred at the Hampton Inn Hotel near the airport.

Deatsch-Wright agreed to assist the officers by making a controlled delivery of the cocaine at the hotel. Officers on stakeout at the hotel observed Wilson and McGee arrive in a van. They then saw Wilson take the suitcase containing the cocaine. As the officers moved in both McGee and Wilson attempted to flee but Wilson was apprehended. McGee, however, drove off in the van, running over the foot of a DEA agent in the process. McGee was apprehended some days later.

Wilson was convicted and sentenced to 151 months in prison for conspiracy to possess crack cocaine with intent to distribute. McGee was convicted of that charge and also of assault on a federal officer with a deadly weapon (for running over the officer's foot with the van in his attempt to flee) and was sentenced to 276 months in prison.

**BARRY WILSON**

Wilson's defense theory at trial was that he was merely a friend and companion of McGee who happened to be in the wrong place at the wrong time. He contended that he knew McGee primarily from their performances together in a rap music group. Wilson argued that he had loaned money to various people before and that he had agreed to loan McGee the money necessary to buy a plane ticket for a woman McGee described as his girlfriend.

Wilson attempted to show that he accompanied McGee on the trip to the airport to purchase the ticket because he wanted to make sure the loan actually went toward the plane ticket. Wilson also contended that he

-3-

accompanied McGee to the Hampton Inn Hotel because McGee invited him to go along to pick up his girlfriend.

Wilson insisted that he knew nothing of any involvement by McGee in drug trafficking and that he had no idea that the woman described as McGee's girlfriend was actually delivering drugs. Thus, he argued that his presence at the airport and the hotel was purely innocent. He also argued that he had no knowledge that the suitcase brought to the hotel by Deatsch-Wright contained drugs and that he had no intent to possess or distribute any drugs.

Despite the testimony elicited by Wilson in support of this theory of the case, the jury found him guilty of conspiracy to possess cocaine base with intent to distribute.

Wilson raises three issues on appeal. First, he argues that the trial court erred in refusing to allow him to call a defense witness who he alleges would have corroborated a portion of his defense. Second, he contends that the evidence was insufficient as a matter of law to establish a conspiracy. Third, Wilson contends that the trial court erred in sentencing him under the enhanced penalties applicable to cocaine base (crack cocaine). He argues that the evidence was insufficient to establish that the cocaine seized was cocaine base.

<u>Trial Court Ruling on Admissibility of Proffered Defense Testimony</u>.

At trial Wilson did not testify and put on no witnesses in his own defense. Wilson's attorney did, however, examine eight witnesses produced by co-defendant McGee. All of these witnesses offered testimony in support of Wilson's reputation and character;

for example, that they had no knowledge that Wilson was ever involved in any illegal drug activity. This and other testimony from these witnesses could be viewed as supporting Wilson's defense theory.

On the last day of testimony in the week long trial, Wilson moved to introduce in support of his defense the testimony of one Al Jones. Wilson's attorney stated in a proffer of proof that Jones would testify that "Barry [Wilson] told him . . . that Barry was going to be heading out to the airport to pick up somebody's girlfriend." Wilson contended that this testimony by Jones would have tended to corroborate his version of events, i.e., that he was making the trip to pick up a person he believed was McGee's girlfriend, not accompanying McGee to accept delivery of illegal drugs.

The government raised two objections to this proposed testimony. First, the government contended that the introduction of testimony from Jones would violate an order requiring sequestration of all witnesses which was entered at the beginning of the trial. Both sides had agreed - and the court had ordered - that witnesses should be sequestered, i.e., no witness could attend sessions of court and listen to the testimony of other witnesses. Because counsel for Wilson had not intended to call Jones he had not been barred from the courtroom and had, in fact, attended unspecified portions of the proceedings during the first three days of the trial. The government argued that it would violate this order and unfairly advantage the defendant to call as a last minute witness a person who had sat through the proceedings and listened to the testimony of other witnesses for the government and defense.

The government also objected that this proposed testimony was inadmissible as hearsay, i.e., Jones would testify about something he had heard Wilson say outside the courtroom. The government noted that Wilson's counsel had stated in his opening argument that

Wilson would testify in his own behalf and had outlined the nature of that testimony. However, the government said, it appeared that Wilson had later decided not to testify but to use Jones as a means of testifying indirectly without subjecting himself to cross-examination.

Counsel for Wilson contended: (1) he had no intent to subvert the sequestration order and had just learned late the night before that Jones might have relevant information; and (2) the proposed testimony of Jones should be admitted under the exception to the hearsay rule for statements of the declarant's then existing state of mind.

The trial court considered at some length on the record the arguments of counsel on the proposed testimony of Jones and then ruled that the testimony was inadmissible both because Jones had not been sequestered and because his testimony would be inadmissible hearsay. The trial court also noted that to the extent Jones would be asked to testify about Wilson's reputation for good character and lack of involvement in drug activities such testimony would be merely cumulative to the testimony elicited from other witnesses by Wilson's counsel.

Wilson now contends that the exclusion of Jones' testimony was reversible error. He argues again that Jones' testimony was admissible under the exception to the hearsay rule for evidence of the declarant's then existing state of mind. He also argues that Jones' testimony would not have violated the intent behind the sequestration order because counsel simply hadn't known that Jones had relevant evidence to offer. Wilson further contends that he was prejudiced by the trial court's ruling because Jones was the only witness who could have testified to the specific fact that when Wilson went with McGee to pick up Deatsch-Wright he had described it as going to the airport to pick up McGee's girlfriend.

It is, of course, axiomatic that we give great deference to the rulings of the trial court on evidentiary matters such as the admissibility of proffered testimony. United States v. Logan, 49 F.3d 352, 358 (8th Cir. 1995). We will overturn such rulings of the trial court only for abuse of discretion. See, e.g., United States v. Delpit, 94 F.3d 1134, 1146 (8th Cir. 1996).

In this case, we believe that the trial court neither abused its discretion nor prejudiced the defendant by its ruling. The statement by Jones about what defendant Wilson had told him was clearly hearsay, an out-of-court statement by a declarant whose reliability could not be tested as to the truth of the matter asserted in the statement. See F. R. Evid. 801. While it might be possible that the proffered statement could have been characterized as a statement by the defendant reflecting his then existing state of mind, see F. R. Evid. 803(3), we find no abuse of discretion in the trial court's ruling. See, e.g., United States v. Worley, 88 F.3d 644, 646 (8th Cir. 1996).

In addition, the trial court clearly acted within its discretion in concluding that Jones could not be called to testify at the last minute after sitting in the courtroom and listening to much of the case. The parties had agreed pursuant to Federal Rule of Evidence 615 to an order requiring the sequestration of witnesses. Given this order, the court did not believe it would be fair to allow Jones to hear the testimony of other witnesses and then possibly tailor his own testimony accordingly. See, e.g., United States v. Shurn, 849 F.2d 1090, 1094 (8th Cir. 1988). Such a decision is committed to the sound discretion of the trial court. United States v. Kindle, 925 F.2d 272, 276 (8th Cir. 1991).

In any event, we do not believe Wilson was prejudiced by the trial court's ruling. Wilson's trial counsel brought out through his questioning of eight other witnesses the contention that Wilson was unaware of, and not involved in, any drug activity. As the

-7-

trial court noted, Jones' testimony would merely have been cumulative to this other evidence. Logan, 49 F.3d at 358. The jury considered Wilson's version of events but apparently rejected it as unpersuasive and accordingly convicted. We do not find any reversible error in the trial court's ruling to exclude the Jones testimony.

Sufficiency of the Evidence.

Wilson also contends on appeal that the evidence was insufficient as a matter of law to support a conviction for conspiracy with intent to distribute. He argues that at most the evidence showed his presence at the scene of a drug delivery.

The standard of review on a claim of insufficient evidence is stringent. We review the evidence in the light most favorable to the jury's verdict. United States v. Jenkins, 78 F.3d 1283, 1287 (8th Cir. 1996). And, we give the verdict the benefit of all reasonable inferences that might be drawn from the evidence. United States v. Gaines, 969 F.2d 692, 696 (8th Cir. 1992). We will overturn the jury's verdict only if no reasonable jury could have concluded that the government proved the elements of the offense beyond a reasonable doubt. Logan, 49 F.3d at 359.

In order to prove the existence of a conspiracy, the government must show that at least two persons entered an agreement and the objective of the agreement was a violation of law. United States v. Scott, 91 F.3d 1058, 1061 (8th Cir. 1996). Wilson claims here that there was insufficient evidence that he agreed to possess or distribute cocaine base to convict him of conspiracy.

It is true that the evidence of Wilson's intent to join a conspiracy was circumstantial. However, it is established that the agreement necessary for a criminal conspiracy may be proved by circumstantial evidence and inferences to be drawn from that evidence. Jenkins, 78 F.3d at 1287. In many conspiracy cases

there is no confession by the defendant or other direct proof that he agreed to the illegal act. However, the jury is free to consider all the evidence - direct and indirect - presented of the defendant's statements and actions. Id. The jury is also free to draw reasonable inferences from the evidence presented about what the defendant's state of mind was when he did or said the things presented in the evidence. Id.

In this case it may be possible that the jury could have believed Wilson's story and could have acquitted him of conspiracy. But that is not the same as saying that the jury's verdict of guilty cannot stand. There is more than enough evidence in the record to support the jury's conclusion - implicit in its verdict -that Wilson was a knowing participant in the events in question and not merely an unfortunate innocent. Wilson provided the cash necessary to purchase Deatsch-Wright's plane ticket and accompanied McGee to the airport to purchase that ticket. The ticket was for travel the very next day. Wilson was also present at the hotel when Deatsch-Wright arrived to deliver the drugs. Deatsch-Wright handed the suitcase containing the cocaine to Wilson. When confronted by the police at the hotel, Wilson attempted to flee.

This evidence is sufficient to establish Wilson's knowing and intentional participation in the conspiracy. Accordingly, Wilson's conviction was not an error of law.

Sentencing for Cocaine Base.

In his third issue on appeal,[2] Wilson contends that it was error for the district court to sentence him under the enhanced statutory minimum for cocaine base and the enhanced sentencing guidelines for crack cocaine because there was insufficient

---

[2]Wilson raised the claim that he was wrongly sentenced for conspiracy to distribute cocaine base in a supplemental brief filed after argument. We granted leave to file the brief and here consider the argument on its merits.

evidence to permit the court to conclude that the form of cocaine involved here was cocaine base or crack. We reject this claim.

Although for scientific purposes cocaine and cocaine base are considered the same substance, under the Federal Sentencing Guidelines cocaine base is defined as "crack cocaine" and greater punishment applies to cocaine base than to cocaine. As we have previously held, whatever the merits of the argument that such enhanced penalties are unsound as a matter of policy, we are not at liberty to judicially revise the Sentencing Guidelines and the enhanced penalties for cocaine base are not unconstitutional. <u>United States v. Clary</u>, 34 F.3d 709, 712 (8th Cir. 1994), <u>cert. denied</u>, 115 S. Ct. 1172 (1995).

The government's forensic chemist testified that the substance here was "cocaine base" and that conclusion was not contradicted by any other evidence. Thus, there unquestionably was sufficient record evidence to support the court's sentence as well as the jury's verdict. <u>Gibson v. Bowersox</u>, 78 F.3d 372, 373-74 (8th Cir.), <u>cert. denied</u>, 117 S. Ct. 158 (1996); <u>Dobynes v. United States</u>, 991 F.2d 801 (8th Cir. 1993). It is irrelevant that the chemist did not specifically say "this substance is cocaine base which is the same as crack" or words to that effect and Wilson has cited no authority for the proposition that the magic word "crack" must always be used instead of the term cocaine base. Accordingly, we deny Wilson's claim that his sentence was in error.

**<u>FREDERICK McGEE</u>**

McGee raises three issues on appeal: (1) the grand jury indictment was defective and McGee's motion for acquittal should have been granted because Deatsch-Wright later admitted that her story was false in some particulars; (2) co-defendant Wilson's counsel made statements in his closing argument which created an irreconcilable conflict between the defendants and required severance; and (3) the evidence was insufficient to convict. We

find no merit in any of these arguments and affirm the judgment entered by the district court on the jury's verdict.

Motion for Acquittal.

The female drug courier eventually identified as Deatsch-Wright originally told investigating officers that her name was Kirsten Mactas and that she was delivering the drugs to St. Louis for a man named "Big John." She also claimed that she was a prostitute and exotic dancer when she was, in fact, married and operated a tax preparation service. It was on this basis that the officers arranged for the controlled delivery, Wilson and McGee were arrested, and indictments were obtained. It was not until shortly before trial that the police learned Deatsch-Wright's real identity and that the man she was carrying the drugs for was actually known as "Bird."

McGee contends that because Deatsch-Wright's earlier statements were shown by her later statement to be unreliable in some respects, all the information given by Deatsch-Wright was unsound and the indictment was not based on probable cause. We find this argument singularly unpersuasive.

It is true that Ms. Deatsch-Wright did not originally tell the whole truth. For instance, she lied about her true name. However, many of the details about how she came to carry the drugs from Phoenix to St. Louis were corroborated by the investigating officers before McGee and Wilson were arrested. In particular, Deatsch-Wright's statement was correct as to the name and appearance of the person to whom she was to deliver the drugs and matched closely the officers' own observation of McGee's appearance.

We find nothing in Ms. Deatsch-Wright's statement so inherently unreliable that it was unreasonable for the investigating officers or the grand jury to rely upon it in

-11-

arresting and charging the defendants.  The decision on granting a motion for acquittal is within the sound discretion of the trial court and the court clearly acted within that discretion here.  <u>United States v. Hunter</u>, 95 F.3d 14, 16 (8th Cir. 1996); <u>United States v. French</u>, 88 F.3d 686, 688 (8th Cir. 1996).

<u>Severance</u>.

In closing argument, counsel for Wilson made the following statement:

> Mrs. Wright was down in Phoenix with Bird and Boom and a girlfriend talking about Fred.  At the airport, Fred signs the paperwork, and signs it Frederick Lakes.  At the Hampton Inn, they are waiting for Fred.  Fred shows up.  Fred runs, Fred hops in the van, races the engine, spins the tires, takes off, runs over a cop.  Fred did that.  They get Fred's fingerprints, they find a lot of pieces of paper, the various evidence that you have seen, got Fred's name on it.  Fred, Fred, Fred, Fred. Fingerprint, money order, clothes, but you don't hear about Barry.

Counsel for McGee did not object during the closing argument but moved for a new trial in part based on the argument that McGee was prejudiced by his joint trial with Wilson.  The trial court overruled the motion for new trial.

McGee now contends that the statement of Wilson's counsel in closing argument is evidence of an irreconcilable conflict between the defendants which required that the defendants be tried separately to avoid undue prejudice.

In every case of multiple criminal defendants there is the possibility - even the likelihood - that at some point the interests of the individual defendants will diverge.  There is also the possibility that the jury may be prejudiced in its consideration of the charges against one defendant by evidence bearing on the actions of another defendant. However, the mere

possibility of inconsistent interests or spillover evidence is not enough to require overturning verdicts reached in a joint trial.

The issue of whether to sever multiple defendants is assigned in the first instance to the discretion of the trial court. United States v. Smith, 578 F.2d 1227, 1235 (8th Cir. 1978). The decision of the trial court will only be overturned for abuse of discretion. Id.

Here, we find no abuse of discretion. First, we do not agree that the cited statement by Wilson's counsel in closing argument shows an irreconcilable conflict. Second, even if there was such a conflict, according to McGee it came to light only in the closing arguments when the jurors were already well familiar with the facts against the individual defendants. Moreover, by that time considerable judicial resources had already been expended in the joint trial. To reverse on such speculative grounds here would waste judicial resources and would essentially give defendants such as McGee the option of waiting to see how the joint trial goes before raising the conflict issue and requesting a separate trial.

We believe the trial court's decision to overrule McGee's belated request for severance was correct and clearly not an abuse of discretion.

Sufficiency of the Evidence.

Finally, McGee contends that the evidence against him was insufficient as a matter of law to support a conviction for conspiracy to possess crack cocaine with intent to distribute. McGee's argument that there was insufficient evidence of an agreement parallels that of co-defendant Wilson and we reject it on the same basis. If anything, the specific evidence tying McGee to the drug conspiracy was stronger: it was McGee who was alleged to have known the cocaine distributor in Phoenix; it was McGee whose name and physical description were given by the drug courier; and

-13-

it was McGee who fled the hotel and remained at large for some time thereafter.  As we noted with respect to defendant Wilson, the jury might have believed the defense theory and acquitted.  However, the argument that there was insufficient evidence to convict McGee is clearly without merit.[3]

For the reasons stated, we affirm the judgments of conviction entered against Barry Wilson and Frederick McGee.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[3]McGee filed a motion to join the argument raised by Wilson in his supplemental brief that there was insufficient evidence to support the sentence enhancement for cocaine base.  We granted the motion allowing McGee to raise this issue but reject the claim on its merits for the same reasons noted above for Wilson.