# United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**

_____

No. 98-2953

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Western |
| | * | District of Arkansas. |
| Robert Joseph Rosso, Jr., | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

No. 98-4109

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Arkansas. |
| Gary S. Wainwright, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted:  May 14, 1999
Filed:  Jun  17, 1999

_____

Before WOLLMAN, Chief Judge, BEAM and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

In these two criminal cases the appellants raised an identical challenge to the Eighth Circuit Model Jury Instruction on reasonable doubt, and the cases were consolidated for hearing. Appellant Robert Joseph Rosso, Jr. was convicted of conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1), and he was sentenced to life imprisonment without release.[1] Appellant Gary S. Wainwright was convicted of the interstate transportation of stolen goods in violation of 18 U.S.C. § 2314, and he received twenty-one months of imprisonment followed by three years of supervised release after the district court[2] denied his post trial motion for judgment of acquittal. Wainwright also claims on appeal that there was insufficient evidence to uphold his conviction. We affirm in both cases.

Appellants claim that the Eighth Circuit pattern instruction on reasonable doubt is unconstitutional under the due process clause because it is vague and fails to stress the government's burden of proof. Both objected to its use at their trials. The model instruction on reasonable doubt reads as follows:

> A reasonable doubt is a doubt based upon reason and common sense, and not the mere possibility of innocence. A reasonable doubt is a kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt, therefore, must be proof of such

---

[1]The Honorable Jimm Larry Hendren, Chief Judge, United States District Court for the Western District of Arkansas, presiding.

[2]The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas.

convincing character that a reasonable person would not hesitate to rely and act upon it. However, proof beyond a reasonable doubt does not mean proof beyond all possible doubt.

Eighth Circuit Model Jury Instruction — Criminal, Instruction 3.11 (1996).

Appellants raise several objections to this instruction and cite portions of other definitions of reasonable doubt which they believe to be superior.[3] They argue that the instruction is vague because it circularly defines "reasonable doubt" in terms of "reason" and "reasonable" and that jurors would therefore be unable to understand the concept. They also contend that the instruction is deficient under Holland v. United States, 348 U.S. 121, 140 (1954), because the third sentence uses the phrase "would not hesitate to . . . act."[4] Finally, appellants argue that the instruction does not stress the gravity of a juror's decision. They prefer language such as that in one of the standard pattern instruction collections which states that the proof must be "of such a convincing character that a reasonable person would not hesitate to rely and act upon it *in the most important of his or her own affairs*." 1 Edward J. Devitt et al., Federal Jury Practice and Instructions § 12.10 (4th ed. 1992) (emphasis added).

We have previously found the circuit model instruction on reasonable doubt to pass constitutional muster in a number of cases. See, e.g, United States v. Kime, 99 F.3d 870, 877 (8th Cir. 1996) (challenged for not saying reasonable doubt could arise from lack of evidence); United States v. Harris, 974 F.2d 84, 85 (8th Cir.1992) (challenge was to the phrase "and not the mere possibility of innocence" as lowering

---

[3]Appellants quote instructions on reasonable doubt formulated by the Federal Judicial Center and the Eleventh Circuit, as well as a model instruction from Arkansas.

[4]Holland counsels that "doubt" should be defined in terms of what "would make a person hesitate to act" rather than what would make a person "willing to act." 348 U.S. at 140.

the government's burden of proof); United States v. Knight, 547 F.2d 75, 77 (8th Cir.1976) (per curiam) (substantively similar instruction challenged for not defining reasonable doubt "exclusively in terms of hesitation to act"). To the extent this precedent covers the points raised here, we are not free to depart from it. See United States v. Olness, 9 F.3d 716, 717 (8th Cir. 1993). To the extent appellants raise somewhat different challenges to the instruction, their arguments fail on the merits. The instruction is not circular just because it uses reason or reasonable to define reasonable doubt. The use of these words is appropriate and unlikely to confuse jurors. Cf. Jackson v. Virginia, 443 U.S. 307, 317 (1979) ("A 'reasonable doubt' . . . is one based upon 'reason.'"). The instruction is not deficient under Holland because it defines doubt in its second sentence exactly as counseled by that case, and the third sentence of the instruction which discusses the measure of proof does not undermine that definition. While appellants prefer certain other formulations of a reasonable doubt instruction, they have not shown that the Eighth Circuit model is unconstitutional or that it fails to inform jurors of the seriousness of their responsibility.

In addition to the jury instruction issue raised by both appellants, Wainwright argues that there was insufficient evidence to convict him of the federal offense of interstate transportation of stolen goods. He claims that the proof at trial showed only that he made bad business judgments or possibly violated state law and that his post trial motion for acquittal should have been granted. On a claim of insufficient evidence we review the evidence at trial "in the light most favorable to the jury's verdict" and "give the verdict the benefit of all reasonable inferences that might be drawn from the evidence." United States v. Wilson, 103 F.3d 1402, 1406 (8th Cir. 1997) (citations omitted). "We will overturn the jury's verdict only if no reasonable jury could have concluded that the government proved the elements of the offense beyond a reasonable doubt." Id.

The evidence at trial showed Wainwright managed the Little Rock, Arkansas store of Dealers Truck Equipment Company, Inc. (Dealers). Dealers is based in

Shreveport, Louisiana, and its primary business is retro-fitting trucks for commercial use. Wainwright expanded his store's business to include the sale of accessory equipment for four wheel drive and all terrain vehicles. In the summer of 1995 Wainwright's store began selling accessory equipment to P.G.S. 4X4Centre (PGS), an Australian company. Dealers' home office had a policy requiring its approval of all new accounts, but it was not made aware of the PGS account. Wainwright sought to become a partner in PGS with a one-third ownership interest, and he established his own export company to facilitate shipment to PGS of products purchased directly from the manufacturer.

Equipment was at first only shipped to PGS after payment had been received, but later it was shipped on credit. Dealers' home office became aware of the PGS account when payment for one shipment had not been received within 60 days. It advised Wainwright to stop doing business with PGS and insisted that a credit application be completed. PGS faxed Wainwright the necessary information in January 1996, and he had his secretary verify the information and prepare a credit application. The credit application was backdated to July 15, 1995, and Wainwright wrote Dealers that a credit application had been completed before any of the shipments to PGS.

Wainwright became aware of a trade show to be held in Australia in February 1996, and he shipped approximately $50,000[5] of Dealers' equipment to Australia five weeks before the show. No one at Dealers' home office knew about the shipment, and it was not handled like an ordinary business transaction. PGS had not ordered the equipment; it was only expecting a few samples to display at the show.[6] No invoice

_____

[5]The indictment alleged a value of $47,000; the government's brief states the equipment was worth $60,000.

[6]Wainwright maintains that he had discussed with PGS the possibility of sending two vehicles to display at the show — his own and one owned by another store employee.

had been prepared; the contents of the shipment were only documented on a legal pad.[7] Wainwright personally arranged and paid for a roundtrip ticket to Australia so that he could help PGS at the show. He had not originally sought permission for the trip, but later requested that he be reimbursed for the airfare. Dealer's home office told him they had no interest in the trade show and that if he went it would be on his own time and with his own money. PGS paid customs officials $21,000 in Australian funds for shipping costs and taxes upon the arrival of the equipment in Australia. Wainwright went with a PGS partner to the bank to borrow the necessary funds. Approximately $10,000 of equipment was sold at the show, some for cash.[8] Dealers later tried unsuccessfully to collect from PGS for the shipped equipment, and it recovered the unsold merchandise only after it had been seized by Australian law enforcement.

While Wainwright was in Australia, two employees from the Little Rock store went to Shreveport to report certain of his activities to company officials. After hearing their report, both the president and vice-president of Dealers drove to Little Rock to investigate. As a result of the investigation, Wainwright was terminated when he returned from Australia. An inventory conducted after Wainwright was terminated showed that the Little Rock store was short $209,000.

There was also a considerable amount of testimony admitted at trial under Fed. R. Evid. 404(b) concerning other wrongs committed by Wainwright while conducting the business. His secretary testified that he had instructed her to deposit into petty cash a $3,000 money order payable to Dealers, then wrote himself a check for $3,000, and asked her to cash the check for him. She also testified that this was not an isolated incident and that he kept a slush fund that he concealed from his superiors in

---

[7]Wainwright argues that documenting the shipped equipment on a legal pad was done in preparation for generating an invoice.

[8]Wainwright maintains that he did not receive any proceeds from the sales at the show.

Shreveport. Another employee testified about various instances of self-dealing by Wainwright, including one episode in which Wainwright simply told him to fix the computer inventory so that nothing would appear to be wrong after he had reported that a large number of winches were missing.

Wainwright was arrested by local officials after his termination and later indicted by a federal grand jury and convicted for transporting stolen property in interstate commerce in violation of 18 U.S.C. § 2314.[9] In order to prove this offense the government had to show that Wainwright knew the Australian shipment was "stolen, converted or taken by fraud." 18 U.S.C. § 2314. Wainwright argues that the government presented no evidence that he had been aware PGS was not intending to pay for the interstate shipment of equipment to Australia. He maintains that this is really only a case of bad business judgment.

The government need not have disproven every reasonable hypothesis of innocence for the jury's verdict to be upheld; rather it only needed to provide sufficient evidence for a reasonable fact-finder to find Wainwright guilty beyond a reasonable doubt. See United States v. Turk, 21 F.3d 309, 311 (8th Cir. 1994). Where the evidence could be interpreted in more than one way, the jury's interpretation must be upheld. See United States v. Erdman, 953 F.2d 387, 389 (8th Cir. 1992). There was a great deal of evidence to support the jury's verdict, and it obviously rejected Wainwright's theory of the case after considering all the evidence.

_____

[9]The relevant part of the statute states: "Whoever transports, transmits, or transfers in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud . . . [s]hall be fined under this title or imprisoned not more than ten years, or both." 18 U.S.C. § 2314.

Wainwright theorizes that the jury must have relied on evidence admitted under Fed. R. Evid. 404(b) about some of his other business practices which he argues could only amount to violations of state law. There was no objection to the admission of this evidence at trial, Wainwright stipulated to the admission of almost seventy exhibits, and he does not argue on appeal that the district court erred in admitting the evidence. He suggests that the jury could have erroneously convicted him because of this evidence, however, because there was insufficient evidence in the case to prove a federal offense. After reviewing the record we conclude that a reasonable jury could have found beyond a reasonable doubt that Wainwright knew the Australian shipment was "stolen, converted or taken by fraud" quite apart from any consideration of the 404(b) evidence. Furthermore, while the jury could not consider the 404(b) evidence as proof that Wainwright committed the offense because of bad character, it could properly be considered on the issues of knowledge, common plan, and absence of mistake or accident. See Fed. R. Evid. 404(b). There was conflicting evidence at trial, but it was for the jury to judge credibility and to choose what evidence to rely on. See United States v. Ireland, 62 F.3d 227, 230 (8th Cir. 1995). The evidence was sufficient for a reasonable fact-finder to have found Wainwright guilty beyond a reasonable doubt.

We conclude for these reasons that there is no basis to overturn the convictions of either Rosso or Wainwright. The judgments are therefore affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-8-