# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-4426

_____

United States of America,

        Appellee,

    v.

Thomas N. Johnson,

        Appellant.

_____

No. 05-4444

_____

United States of America,

        Appellee,

    v.

Lamell T. Jones, also known as
Larry Story, also known as Larry
Gunn, also known as Lamel Jones,

        Appellant.

Appeals from the United States
District Court for the
Western District of Missouri.

_____

Submitted: September 26, 2006
Filed: December 7, 2006
_____

Before LOKEN, Chief Judge, BEAM and GRUENDER, Circuit Judges.
_____

GRUENDER, Circuit Judge.

A jury convicted Thomas N. Johnson and Lamell T. Jones on several criminal counts including conspiring to possess with intent to distribute 50 grams or more of cocaine base (crack) in violation of 21 U.S.C. §§ 841(a)(1) and 846. The district court[1] sentenced each of them to life in prison. Both Johnson and Jones appeal their respective convictions, primarily challenging the sufficiency of the evidence. For the reasons that follow, we affirm the convictions.

## I.    BACKGROUND

At around 1:30 a.m. on December 7, 2003, Kansas City police received complaints about loud music in the area of 36th Street and Bellaire Avenue. They dispatched Officers Thomas Miles and Andrew Ritchie to investigate. Officers Miles and Ritchie approached the area with their vehicle's windows rolled down in order to listen for noises. As they drove down Bellaire Avenue, they observed several people standing near two cars. The officers stopped briefly to tell the group to turn down their music, then proceeded further down the block. When they reached the end of the block, Officer Miles observed in his rear-view mirror the headlights of one of

_____

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

the cars move, and both officers heard a loud crash come from the area. Officer Miles made a U-turn to investigate.

Upon returning to the scene, Officers Miles and Ritchie observed three men exit from a green Kia, one of the vehicles apparently involved in the crash that they had heard. They observed Johnson exit from the driver's seat of the Kia, Jones exit from the front passenger area, and a third, unidentified man exit from the rear passenger door. Officers Miles and Ritchie exited from their vehicle as well. As they approached on foot, Johnson began to run and did not respond to the officers' requests to stop. They pursued Johnson, caught him and subdued him. Officer Miles then observed Jones reaching into the front passenger area of the Kia. Fearing that he was reaching for a gun, Officer Miles drew his weapon and instructed Jones to stop. As Officer Miles approached him, Jones threw a plastic baggie to the ground near Officer Miles and ran down the street. After a significant foot chase, Officer Miles eventually caught Jones. The third individual who exited the Kia was never identified or located.

After learning the identities of Johnson and Jones and discovering outstanding Kansas City warrants for them, the officers arrested and searched them. On Johnson, they found a Crown Royal bag containing 37 baggies of marijuana, but he had no cash. On the other hand, Jones had no drugs on him but carried $3,149.00, mostly in ten and twenty dollar denominations. The officers also conducted an inventory search of the Kia before having it towed. In it, they found a plastic bag under the driver's seat containing 57.30 grams of crack cocaine and more than sixty .22 caliber bullets in the trunk. The baggie that Jones had thrown to the ground prior to fleeing from Officer Miles was later found to contain 4.46 grams of crack cocaine wrapped in eight plastic baggies.

At trial, the Government presented expert testimony about street-level narcotics dealing from an experienced undercover Kansas City police officer. Among other things, he testified that it is common for street-level dealers to operate in teams of two

-3-

or three, with one person handling the drugs, another the cash, and a third a weapon. In addition to the expert's testimony, the Government introduced evidence that each defendant had prior convictions for selling crack cocaine.

Johnson and Jones each made a motion for judgment of acquittal under Fed. R. Crim. P. 29 at the close of the Government's case-in-chief, and the district court denied both motions. A jury convicted Johnson on three counts: conspiracy to possess with intent to distribute 50 grams or more of cocaine base, possession with intent to distribute 50 grams or more of cocaine base and possession with intent to distribute marijuana. Johnson does not challenge his conviction on the marijuana charge. The jury also convicted Jones on three counts stemming from the events of December 7, 2003: conspiracy to possess with intent to distribute 50 grams or more of cocaine base, possession with intent to distribute 50 grams or more of cocaine base for the 57.30 grams of crack cocaine found under the driver's seat of the car and possession with intent to distribute cocaine base for the 4.46 grams of crack cocaine that he threw to the ground.[2] After trial, both Johnson and Jones filed written motions for judgments of acquittal which the district court denied. The district court sentenced both Johnson and Jones to life in prison pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 851.

Johnson and Jones appeal the denials of their motions for judgments of acquittal.[3] Johnson asserts that the evidence presented by the Government at trial was insufficient to support his convictions for conspiracy and possession with intent to distribute 50 grams or more of crack cocaine. Jones similarly challenges the

---

[2]Jones was also convicted for possession with intent to distribute five grams or more of crack cocaine stemming from an August 20, 2003 traffic stop. Jones does not challenge his conviction on that count.

[3]In their motions for judgments of acquittal, both Johnson and Jones alternatively moved for new trials. Neither appeals the denial of his respective motion for a new trial.

sufficiency of the evidence for his conspiracy conviction. In addition, Jones argues that the charge against him for aiding and abetting possession with intent to distribute 50 grams or more of cocaine base was improper. We address each of these issues in turn.

## II. DISCUSSION

We review a district court's denial of a motion for judgment of acquittal de novo. *United States v. Winston*, 456 F.3d 861, 866 (8th Cir. 2006). In doing so, we view the evidence in the light most favorable to the Government, accepting all reasonable inferences from the evidence that support the jury's verdict. *Id*. We will uphold the conviction "as long as there is an interpretation of the evidence that would allow a reasonable-minded jury to find the defendant guilty beyond a reasonable doubt." *United States v. Peters*, 462 F.3d 953, 957 (8th Cir. 2006) (internal quotation and alterations omitted).

### A. Conspiracy

In order to convict a defendant on a conspiracy charge, the Government must prove beyond a reasonable doubt that the defendant "(1) had an agreement to achieve an illegal purpose, (2) knew of the agreement, and (3) knowingly became part of the agreement." *Winston*, 456 F.3d at 866 (quotation omitted). Either direct or circumstantial evidence may be used to prove a conspiracy. *United States v. Lopez*, 443 F.3d 1026, 1030 (8th Cir. 2006) (en banc), *cert. denied sub nom. Parra v. United States*, 127 S. Ct. 214 (2006).

Ample evidence presented in the Government's case-in-chief supports the conspiracy convictions against both Johnson and Jones. The arresting officers observed Johnson in the driver's seat and Jones in the passenger's seat of the vehicle in which the officers later found 57.30 grams of crack cocaine under the driver's seat.

The officers also observed a third person in the vehicle at the same time who later left the scene and was never apprehended. Both Johnson and Jones fled from the police. *See United States v. Dierling*, 131 F.3d 722, 731 (8th Cir. 1997) ("Flight from law enforcement officers can be probative of consciousness of guilt and may further a conspiracy."). Before he fled, Jones loitered around the car and attempted to reach into the front passenger-side area. When Officer Miles ordered Jones to move away from the vehicle, he saw Jones throw a baggie to the ground. The baggie was later found to contain 4.46 grams of crack cocaine packaged in eight smaller baggies. In addition to this evidence, Johnson and Jones had each been convicted before on crack-related offenses. The Government introduced these convictions pursuant to Fed. R. Evid. 404(b), an issue not challenged here, and they are probative of knowledge of the conspiracy and intent. *See United States v. Adams*, 401 F.3d 886, 894 (8th Cir. 2005) (noting that prior convictions for possessing or distributing drugs are relevant to show knowledge and intent in a charge of conspiracy to distribute drugs), *cert. denied sub nom. Parker v. United States*, 126 S. Ct. 492 (2005).

A search revealed that Johnson carried distribution-quantities of marijuana on him, packaged for resale, but he had no cash. On Jones, the police found $3,149.00 in mostly ten and twenty dollar bills, but he had no drugs. To explain this evidence, the Government presented expert testimony, the admissibility of which is not challenged here, establishing that it is common for street-level drug dealing operations to use three-man teams where one handles the drugs, one handles the money, and one carries a gun. The expert accounted for this separation of functions in street-level drug dealing by identifying a popular misconception among drug dealers that as long as the same individual does not handle both the drugs and the money in a drug transaction, then no prosecutable drug sale has occurred. The expert also testified that street-level dealers commonly make ten and twenty dollar transactions and, as a result, carry large quantities of ten and twenty dollar bills. He went on to explain that the large amounts of cash carried by drug dealers often require the presence of weapons for security purposes.

In sum, the evidence presented by the Government, construed in its favor, supports a reasonable inference that Johnson, Jones and the unidentified third individual were acting as a street-level drug-dealing team as described by the Government's expert. Consequently, the evidence presented by the Government is sufficient for a reasonable jury to have concluded beyond a reasonable doubt that Johnson and Jones conspired to possess with intent to distribute more than 50 grams of crack cocaine.

## B. Possession with Intent to Distribute

### 1. Johnson

This evidence is also sufficient to prove that Johnson possessed with intent to distribute the 57.30 grams of crack cocaine. Johnson only challenges the sufficiency of the evidence with respect to the possession element of this charge. To prove possession, the Government may show that Johnson constructively possessed the 57.30 grams of crack cocaine. *United States v. Flores*, 362 F.3d 1030, 1036 (8th Cir. 2004). To prove constructive possession, the Government must show that Johnson had "knowledge and ownership, dominion, or control over the contraband itself, or dominion over the vehicle in which the contraband is concealed." *Id.* (internal quotation and alterations omitted). Johnson's presence in the driver's seat of the car is probative of his control over the crack cocaine found under that seat. *See id.* It is also a reasonable inference, favorable to the jury's verdict, that Johnson fled from the police in order to physically distance himself from the crack cocaine under the driver's seat; thus, his flight is probative of his knowledge. In light of the expert's testimony about street-level drug dealing arrangements, it was reasonable for the jury to find that Johnson knew of and controlled the crack cocaine since he had marijuana on him and no cash, yet Jones had a significant amount of cash on him and no drugs. From all of this evidence, a reasonable jury could have concluded beyond a reasonable doubt that

Johnson possessed the 57.30 grams of crack cocaine found beneath the driver's seat of the Kia.

Alternatively, the jury could have reasonably determined that Johnson and Jones jointly possessed the 57.30 grams of crack cocaine. *United States v. Cawthorn*, 429 F.3d 793, 798 (8th Cir. 2005) ("[P]ossession need not be exclusive, but may be joint."), *petition for cert. filed* (U.S. May 25, 2006) (No. 05-11273). As discussed, the Government presented evidence from which the jury could have reasonably inferred that Johnson and Jones were operating as a street-level drug dealing team. The 57.30 grams of crack cocaine under Johnson's seat was reasonably accessible to both men, and both ultimately fled from the area of the vehicle. On this evidence, a reasonable jury could have concluded beyond a reasonable doubt that Johnson and Jones jointly had knowledge, ownership, dominion and control over the 57.30 grams of crack cocaine in the car.

### 2. Jones

Next, Jones argues that his conviction for aiding and abetting possession with intent to distribute 50 grams or more of cocaine base is improper for two reasons. First, Jones asserts that Johnson was not charged as a principal in the underlying offense. This argument is factually wrong. In Count III of the superseding indictment, both Johnson and Jones were charged with the principal offense of possession with intent to distribute 50 grams or more of cocaine base as well as aiding and abetting each other. Second, Jones argues that he was convicted in Count IV for the same offense as in Count III: possession with intent to distribute 50 grams or more of crack cocaine. Jones is incorrect here as well. The superseding indictment, jury instructions, verdict form and criminal judgment all show that Count IV charged Jones with possession with intent to distribute crack cocaine, with no reference to quantity. As the Government argued at trial, this charge was based on Jones's possession of the 4.46 grams of crack cocaine that he discarded in front of Officer Miles. Jones's second argument therefore also fails for want of a correct premise.

Jones also challenges the sufficiency of the evidence supporting his conviction on Count IV. The 4.46 grams of crack cocaine packaged in eight smaller baggies that Officer Miles saw Jones throw down, his flight from Officer Miles and the large sum of small bills found on him at the time of his arrest on December 7, 2003 is more than sufficient evidence on which a reasonable jury could have found Jones guilty beyond a reasonable doubt for possession with intent to distribute the 4.46 grams of crack cocaine. *See, e.g., United States v. White*, 969 F.2d 681, 684 (8th Cir. 1992) (holding similar evidence sufficient to sustain a jury verdict of possession with intent to distribute cocaine).

Finally, it is Eighth Circuit policy not to address issues raised by a defendant in pro se filings with this Court when he is represented by counsel. *United States v. Halverson*, 973 F.2d 1415, 1417 (8th Cir. 1992) (per curiam). Nevertheless, we have reviewed Jones's pro se filing and find his additional arguments unpersuasive.

## III.   CONCLUSION

For the foregoing reasons, we affirm the convictions of Johnson and Jones.

_____