# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-4121

_____

United States of America,　　　　　*
　　　　　　　　　　　　　　　　　*
　　　Plaintiff - Appellee,　　　　*
　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　　v.　　　　　　　　　　　　　*　District Court for the
　　　　　　　　　　　　　　　　　*　District of Minnesota.
Mark Louis Peters,　　　　　　　　*
　　　　　　　　　　　　　　　　　*
　　　Defendant - Appellant.　　　 *

_____

Submitted: May 17, 2006
Filed: September 14, 2006

_____

Before LOKEN, Chief Judge,  JOHN R. GIBSON and COLLOTON, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Mark Louis Peters appeals from his conviction for bank fraud in violation of 18 U.S.C. § 1344 and counterfeited securities in violation of 18 U.S.C. § 513(a). The charges arose in connection with a counterfeit check in the amount of $90,700 payable to Peters and delivered to his home. He endorsed the check and deposited it into his account at Bremer Bank; Peters contends that he did not know that the check was counterfeit. Some two months later, the bank advised him that the check was counterfeit and he offered to repay it if he was responsible, but the bank did not pursue the offer. Nearly three years later, the FBI arrested him, and he was indicted

and convicted on both counts. Peters argues that the district court[1] erred in denying his motions for acquittal and for a new trial because the government failed to introduce sufficient evidence of criminal intent. We affirm.

## I.

A commercial delivery service came to Peters's home in January 2002 and delivered a $90,700 check, payable to Peters and P&M, Inc. P&M was a company that Peters had started, but it was not registered or doing any business. Peters had opened a savings account with a ten dollar deposit on November 26, 2001, in his name "d/b/a P&M," or doing business as P&M, so that he could conduct transactions in both names. The $90,700 check was purportedly drawn by National States Insurance Company, a life and health insurance company. After asking bank officials whether the check would clear, Peters deposited it into the P&M account at the Bremer Bank on January 29, 2002. Within two weeks of depositing the check, he withdrew or moved to his checking account almost half of the funds. As Peters later told an FBI agent, he felt like he had won the lottery when he received the check, and he speculated that it represented an insurance settlement from a minor automobile accident that he had while working in Arkansas in February 2001. Peters, however, had not been injured in that accident; he had filed no insurance claim, and his employer's only claim was one for property damage filed with a different insurance company, St. Paul Fire & Marine.

In early March 2002, Bremer Bank contacted Peters to notify him that Royal Banks, which held National States' account, was returning the check. Peters expressed surprise to the bank officer that the check was not valid, explaining that he thought the check was a settlement related to the Arkansas automobile accident. Peters also said

---

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

that he did not recognize the name of the insurance company. He offered to repay Bremer Bank at the rate of $100 per week if he was responsible, but the bank never accepted that offer. When he called the bank in May to ask about the status of his account, the bank did not return his calls or notify him that it had not suffered any loss because Royal Banks had waited too long to return the check, entitling Bremer Bank to reject the return under the Uniform Commercial Code. On June 1, 2002, Peters received a letter from Bremer Bank notifying him that it had determined the check was counterfeit.

FBI agents arrested Peters on January 6, 2005, two and a half years after the bank made its determination that the check was counterfeit. Peters told the FBI that the check was an insurance settlement from the Arkansas accident, although he acknowledged that he had not been injured in the accident. At trial, the manager from the insurer that provided coverage for Peters's employer at the time of the accident testified that the insurer makes no payment unless a claim is filed, and when it does so it receives a release from the injured party showing satisfaction of the claim. He testified further that checks in the $90,000 range typically are issued to cover serious bodily injury or loss of income from permanent injuries, neither of which Peters experienced in the February 2001 accident.

Ralph Broeker, a fraud manager for Royal Banks with fifty years of experience in the banking business, identified the check as counterfeit. Broeker testified that the counterfeit check was created from a legitimate check written by National States Insurance Company and made payable to Professional Radiology in the amount of $4.43. Broeker testified that the person who created the counterfeit check would have needed a legitimately issued check, a computer and high-quality printer, suitable software, and supplies such as check stock ink. He further testified that he had no proof that Peters had these materials or knew how to counterfeit a check and that, early in the investigation, he may have told an FBI agent that Peters could have been the victim in the matter.

II.

We review de novo the district court's denial of a motion for judgment of acquittal. United States v. Hively, 437 F.3d 752, 760 (8th Cir. 2006). We view the evidence in the light most favorable to the jury's verdict and draw all reasonable inferences in the government's favor, upholding the conviction as long as "there is an interpretation of the evidence that would allow a reasonable-minded jury to find the defendant[] guilty beyond a reasonable doubt." United States v. Vig, 167 F.3d 443, 447 (8th Cir. 1999). Thus, we must uphold the jury's verdict even where the evidence "rationally supports two conflicting hypotheses" of guilt and innocence. United States v. Serrano-Lopez, 366 F.3d 628, 634 (8th Cir. 2004) (internal quotations and citations omitted). We will reverse the jury's verdict only if the jury "must have had a reasonable doubt concerning one of the essential elements of the crime." United States v. Sandifer, 188 F.3d 992, 995 (8th Cir. 1999).

We review the denial of a motion for a new trial for abuse of discretion. United States v. Rodriguez, 812 F.2d 414, 417 (8th Cir. 1987). The district court should grant a new trial only if "the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred." Id. Absent a "clear and manifest" abuse of discretion, we uphold the district court's ruling on a motion for a new trial. Id.

A.

Peters argues that the district court should have entered a judgment of acquittal or granted a new trial on the bank fraud count because the government produced insufficient evidence that Peters knew the check was counterfeit and thus failed to prove the criminal intent element of the charge. To convict Peters of bank fraud, the government had to prove that Peters "knowingly" executed or attempted to execute "a scheme or artifice--(1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the

custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1344.

Peters contends that the evidence establishes only that he unexpectedly received a check and deposited it, innocently assuming the money was an especially generous insurance settlement for a work-related auto accident he had a year earlier. He argues that no reasonable jury could have found that this evidence proved the criminal intent element for bank fraud where the government failed to bring direct evidence that Peters knew that the check was counterfeit or had the ability to create or obtain a counterfeit check.

The government is permitted to and often does prove a defendant's criminal intent with circumstantial evidence. See United States v. Idriss, 436 F.3d 946, 950 (8th Cir. 2006). Direct evidence of a defendant's mental state frequently is unavailable, United States v. Londondio, 420 F.3d 777, 786 (8th Cir. 2005), and the jury "is entitled to scrutinize and make reasonable inferences from defendant's conduct and from all facts surrounding the incident in question." United States v. Pitts, 508 F.2d 1237, 1240 (8th Cir. 1974). Examples of circumstantial evidence from which a jury reasonably can infer criminal intent include the defendant's "furtive conduct," attempts to abandon the counterfeit material, and "false exculpatory statements." Id.

Viewed in the light most favorable to the verdict, the government's evidence showed that Peters deposited a check for $90,700 into his bank account and that this check, precisely addressed and payable to Peters and delivered to his home, was counterfeit. When Peters deposited the check into his existing savings account, the account balance was $6. In the months before Peters deposited the counterfeit check, Bremer Bank statements showed similarly low balances in his other accounts. Peters told a bank officer and, later, an FBI agent that he thought the check was an insurance settlement from an accident he was involved in a year earlier in a vehicle leased by his

employer. He admittedly had suffered no injury and filed no claim in the accident, however, and his employer's property damage claim was not filed with National States, a life and health insurance company. During the weeks after he deposited the counterfeit check, Peters spent approximately half of the $90,700 to pay creditors and make purchases. When the bank notified him that the check was counterfeit, he responded with an offer to repay the money.

Drawing all reasonable inferences favorable to the government, a reasonable jury could find that Peters knew the sizable check from an insurance company with which he had never filed a claim was counterfeit. When Peters presented that check to the bank for deposit into his account, he represented that he was entitled to the money. See United States v. Ponec, 163 F.3d 486, 489 (8th Cir. 1998). A reasonable jury could conclude beyond a reasonable doubt that, by presenting that large counterfeit check to a bank for deposit into his nearly empty account and spending nearly half the money in the next few weeks, Peters knowingly executed a scheme to obtain money from a financial institution by fraudulent representations in violation of the bank fraud statute, 18 U.S.C. § 1344.

Possibly, the evidence is susceptible to conflicting interpretations. As Peters points out, he engaged in no furtive conduct; he openly deposited the check into his Bremer Bank account. The government's own banking witness testified that he may have told the FBI that Peters could be the victim in the matter, although this was early in the investigation. Moreover, Peters's statements to the bank officer and to the FBI agent that the check was a settlement from the 2001 auto accident are consistent with each other. Nonetheless, the jury reasonably could have interpreted those explanations as false exculpatory statements because of the sheer implausibility of Peters's belief that an uninjured individual who never filed a claim could be entitled to $90,700 from an insurance company unknown to him. Similarly, Peters's prompt offer to repay the money upon notification that the check was counterfeit could show

intent to deal fairly with the banks, but a reasonable jury also could interpret that offer as an attempt to distance himself from the counterfeit material.

While the evidence arguably could support Peters's theory that he unreasonably but innocently deposited the $90,700 check, and spent half of it, on the assumption that it was a fortuitously large insurance settlement from his minor accident the year before, the jury's contrary interpretation of that evidence is reasonable. Where a reasonable-minded jury could have found evidence sufficient to convict, we will not disturb the verdict just because a different jury might have reached a different conclusion. See Serrano-Lopez, 366 F.3d at 634. The government's evidence of the implausibility of Peters's notion that he was entitled to the money as an insurance settlement, coupled with his use of nearly half the funds within two weeks, was sufficient to permit a jury to find beyond a reasonable doubt that Peters knowingly executed a scheme to obtain money from the banks by false representations. Accordingly, Peters was not entitled to a judgment of acquittal on the bank fraud count.

Nor did the district court abuse its discretion in denying Peters's motion for a new trial, because the evidence does not weigh heavily enough against the jury's verdict to render Peters's conviction a miscarriage of justice. As discussed above, although certain interpretations of the evidence support Peters's theory of the case, the jury had more than sufficient evidence to infer that Peters knew the check was counterfeit and falsely claimed entitlement to it in a scheme to obtain money from Bremer Bank and Royal Banks. The district court did not err in denying Peters's motions for judgment of acquittal and new trial with respect to his bank fraud conviction.

B.

Peters next argues that the district court should have entered a judgment of acquittal or granted a new trial on the counterfeited securities count because the government produced insufficient evidence that Peters knew the check was counterfeit or had the ability to create or obtain a counterfeit check and thus failed to prove the criminal intent element of the charge. To convict Peters of counterfeited securities, the government had to prove that Peters, with "intent to deceive," made, uttered, or possessed a counterfeited security, that is, a falsely made check purporting to be genuine. 18 U.S.C. § 513(a), (c).

As with the bank fraud charge, the government was permitted to prove the intent element of the counterfeited securities charge with circumstantial evidence, which is often the only available evidence of a defendant's mental state. See Londondio, 420 F.3d at 786. Again viewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences in its favor, a reasonable jury could conclude beyond a reasonable doubt that Peters's attribution of the $90,700 to an insurance settlement for a minor accident was false and that he knew that the large, precisely addressed check from an insurance company with which he had no prior dealings was counterfeit. A reasonable jury could conclude further that, by presenting that counterfeit check to Bremer Bank for deposit into his nearly empty account and quickly spending nearly half the money, Peters uttered or possessed a counterfeit security with intent to deceive in violation of the counterfeited securities statute, 18 U.S.C. § 513(a). Because the government's evidence was sufficient to allow a reasonable jury to convict Peters of counterfeited securities, he was not entitled to a judgment of acquittal on that count.

Finally, the district court did not abuse its discretion in denying Peters's motion for a new trial on the counterfeited securities count. The same evidence that supports the jury's conclusion on the bank fraud count also supports its finding that Peters was

guilty beyond a reasonable doubt of counterfeited securities where he deposited, and substantially spent, a check that he knew was counterfeit into his bank account. The interpretations of the evidence that support Peters's theory of the case do not weigh so heavily against the verdict as to render the conviction a miscarriage of justice.

For the above reasons, we affirm the judgment of the district court.

_____