# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

Nos. 05-4301/06-1049

_____

United States of America,          *
                                   *
    Appellee/Cross-Appellant,      *
                                   *
    v.                             *
                                   *
Tyrone Judon, also known as        *
Antwon,                            *
                                   *
    Appellant/Cross-Appellee.      *


_____

Nos. 05-4302/06-1050

_____

United States of America,          *
                                   *
    Appellee/Cross-Appellant,      *
                                   *
    v.                             *
                                   *
Gladger Ross, Jr., also known as   *
Big,                               *
                                   *
    Appellant/Cross-Appellee.      *

Appeals from the United States
District Court for the
Northern District of Iowa.

_____

Submitted:  September 28, 2006
Filed:  January 5, 2007

_____

Before LOKEN, Chief Judge, SMITH and GRUENDER, Circuit Judges.
_____

GRUENDER, Circuit Judge.

A jury convicted Gladger Ross, Jr. and Tyrone Judon each on several criminal counts including conspiring to distribute crack and powder cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. The district court sentenced Ross to 210 months in prison and Judon to 50 months in prison. Ross and Judon appeal their convictions and sentences. The Government cross-appeals both sentences. For the reasons that follow, we affirm the convictions as to both defendants but vacate their sentences and remand for resentencing.

I.    BACKGROUND

In late 2004, officers of the North Central Iowa Narcotics Task Force used two confidential informants, Brian Davis, Sr. and his son Brian Davis, Jr., to negotiate several purchases of crack and powder cocaine from Ross and Judon in the Mason City, Iowa area. Beginning in August and continuing through early November of that year, the Davises bought several grams of cocaine, in both crack and powder forms, from Ross and Judon. The Davises bought the cocaine primarily from Ross and occasionally from Judon at Ross's direction, often when Ross could not supply the full quantity requested. Davis Jr. typically bought ten to twelve "rocks" of crack cocaine at a time from Ross and Judon for $200. Davis Sr. typically bought in larger quantities, paying $300 to $400 for an eighth of an ounce (about 3.5 grams) of either powder or crack cocaine.

On January 19, 2005, a federal grand jury indicted Ross and Judon along with a third co-defendant, Holli Price, on multiple drug distribution charges, including one

count for conspiring to distribute both crack and powder cocaine. Within weeks, Ross was arrested on unrelated state charges. While in custody, Ross made inculpatory statements to law enforcement with respect to the federal drug charges. Ross later sought to suppress the statements, arguing that they were involuntary, but the district court denied his suppression motion.

At trial, the Government called both Davis Sr. and Davis Jr. as witnesses. In addition to being a known drug user, Davis Jr. had been convicted in 2004 for assault with intent to commit sexual abuse, for which he was sentenced to two years in prison. Prior to trial, the Government moved in limine to exclude evidence of the sexual nature of Davis Jr.'s conviction. The district court granted the Government's motion over resistance by Judon.

At the close of the Government's case-in-chief, Ross and Judon each orally moved for judgment of acquittal, asserting that the Government's evidence was insufficient to prove the conspiracy charge. They also challenged the sufficiency of the Government's evidence that the conspiracy involved 50 grams or more of crack cocaine, as charged in the indictment. The district court found that the evidence presented was insufficient for a jury to conclude beyond a reasonable doubt that the conspiracy involved 50 grams or more of crack cocaine. The district court otherwise denied their motions. Ross and Judon renewed their motions for judgments of acquittal at the close of all evidence. The district court denied these motions and instructed the jury consistent with its ruling that the evidence presented was sufficient only for the jury to find beyond a reasonable doubt that the conspiracy involved less than 50 grams of crack cocaine.

The jury convicted Ross for conspiring to distribute both crack and powder cocaine, specifically finding Ross responsible for five or more but less than 50 grams of crack cocaine. The jury also convicted Ross on six distribution counts, four involving crack cocaine and two involving powder cocaine. The jury convicted Judon

for conspiring to distribute both crack and powder cocaine, finding Judon responsible for less than five grams of crack cocaine. The jury also convicted Judon on two crack cocaine distribution charges and acquitted him on one charge of distributing powder cocaine.

After trial, Ross and Judon filed written motions for judgments of acquittal, alternatively moving for new trials. Ross filed his motion pro se in conjunction with a request for a new attorney. He chiefly argued that the Davises lacked credibility. Judon also argued that the Davises were not credible, and he asserted that the district court erred by limiting cross-examination into the circumstances surrounding Davis Jr.'s prior conviction. In separate written orders, the district court denied both motions.

At sentencing, the district court found by a preponderance of the evidence that Ross was responsible for 396.48 grams of crack cocaine and 396.48 grams of powder cocaine, suggesting a guidelines base offense level of 34. Relying upon *United States v. Perry*, 389 F. Supp. 2d 278 (D.R.I. 2005), the district court eschewed the 100:1 drug equivalency ratio between crack cocaine and powder cocaine under the guidelines and instead applied a 20:1 ratio. Describing its action as a *Booker* variance under 18 U.S.C. § 3553(a), the district court recalculated Ross's base offense level as 32 using the 20:1 ratio. Coupled with Ross's criminal history category of VI, the district court used the advisory guidelines sentencing range of 210 to 262 months and sentenced Ross to 210 months' imprisonment.

The district court found by a preponderance of the evidence that Judon was responsible for 19.53 grams of crack cocaine, placing him at a base offense level of 26. The district court likewise varied downward by rejecting the 100:1 crack to powder cocaine ratio from the guidelines, instead employing a 20:1 ratio to recalculate a new base offense level of 22. Judon also sought a two-level reduction for a mitigating role in the offense under § 3B1.2 of the guidelines, which the district court

denied. At level 22, Judon's criminal history category of I yielded an advisory guidelines sentencing range of 41 to 51 months, and the district court sentenced him to 50 months' imprisonment.

Ross appeals the district court's orders denying his motion to suppress and denying his motion for a new trial. Ross also challenges the district court's drug quantity findings. Judon appeals the district court's order denying his alternative motions for judgment of acquittal and for a new trial. He also appeals the district court's drug quantity findings and denial of a two-level reduction for a mitigating role in the offense. The Government cross-appeals both sentences, challenging the district court's variances based solely on its rejection of the 100:1 ratio.

## II.     DISCUSSION

### A.     Ross's Motion to Suppress

Ross contends that the inculpatory statements that he made to law enforcement should be suppressed as involuntary. On suppression issues, we review a district court's factual findings for clear error and its legal conclusions de novo. *United States v. Williams*, 431 F.3d 1115, 1117 (8th Cir. 2005). "A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." *United States v. LeBrun*, 363 F.3d 715, 724 (8th Cir. 2004) (en banc), *cert. denied*, 543 U.S. 1145 (2005). In determining the voluntariness of a confession, we examine the totality of the circumstances. *Id*. We will affirm the denial of a motion to suppress "unless the decision is unsupported by substantial evidence, is based on an erroneous view of the applicable law, or in light of the entire record, we are left with a firm and definite conviction that a mistake has been made." *United States v. Vega-Rico*, 417 F.3d 976, 979 (8th Cir. 2005) (quoting *United States v. Hernandez-*

*Hernandez*, 384 F.3d 562, 564-65 (8th Cir. 2004)), *cert. denied*, --- U.S. ---, 126 S. Ct. 1770 (2006).

At the suppression hearing, Officer Logan Wernet testified that Ross initiated the interview with the police by requesting to speak with them. After the officers gave him oral *Miranda*[1] warnings, Ross continued to agree to speak with them. Officer Wernet testified that Ross wanted to cooperate, apparently in an effort to help himself. Officer Wernet conceded that it was "entirely possible" that they told Ross that they would forward his request to cooperate to federal prosecutors. Nevertheless, Officer Wernet testified that he did not observe any signs that Ross's statements were not provided voluntarily and that Ross appeared neither upset nor agitated. Ross argues that he was depressed and under the influence of anti-depressant medication, though he failed to present any competent evidence establishing these facts.[2] He also argues that the officers' agreement to involve federal prosecutors led him to believe that he would receive leniency for his cooperation.

Even assuming that the officers in fact promised to forward Ross's information to federal prosecutors, there is no evidence that such a promise overbore his will and critically impaired his capacity for self-determination. A promise of this kind, without more, is not enough by itself to render Ross's statements involuntary. *See United States v. Otters*, 197 F.3d 316, 318 (8th Cir. 1999) (collecting cases); *see also LeBrun*, 363 F.3d at 725-26 (ruling that even if a defendant's confession was induced by a promise, there must still be evidence that the authorities overbore defendant's will and capacity for self-determination). Without any evidence establishing that the officers overbore his will and critically impaired his capacity for self-determination, Ross's

---

[1]*See Miranda v. Arizona*, 384 U.S. 436 (1966).

[2]Ross's evidence consisted solely of an undated prescription for anti-depressant medication. He did not testify.

arguments fail. We therefore affirm the district court's denial of Ross's motion to suppress his statements.

## B. Judon's Motion for Judgment of Acquittal

Judon contends that the evidence was insufficient to support his conspiracy conviction. We review a district court's denial of a motion for judgment of acquittal de novo. *United States v. Peters*, 462 F.3d 953, 957 (8th Cir. 2006). "When reviewing the sufficiency of the evidence to support a conspiracy conviction, we will affirm if the record, viewed most favorably to the government, contains substantial evidence supporting the jury's verdict, which means evidence sufficient to prove the elements of the crime beyond a reasonable doubt." *United States v. Lopez*, 443 F.3d 1026, 1030 (8th Cir. 2006) (en banc), *cert. denied*, --- U.S. ---, 127 S. Ct. 214 (2006). To prove a conspiracy under 21 U.S.C. § 846, the Government must show that the defendant "(1) had an agreement to achieve an illegal purpose, (2) knew of the agreement, and (3) knowingly became part of the agreement." *United States v. Winston*, 456 F.3d 861, 866 (8th Cir. 2006). "Direct evidence of an explicit agreement is not necessary to prove a conspiracy; instead, a tacit understanding among co-conspirators may be, and often will be, inferred from circumstantial evidence." *Id.* (internal quotation omitted). Indeed, "conspiracies seldom lend themselves to proof by direct evidence." *United States v. Hoelscher*, 914 F.2d 1527, 1533 (8th Cir. 1990). Judon asserts that the evidence at trial was insufficient to establish that an agreement to achieve an illegal purpose existed.

The Government presented sufficient direct and circumstantial evidence to establish the existence of an agreement between Judon and Ross. Davis Jr. testified that on one occasion when he contacted Ross by telephone to buy cocaine, Ross directed him to purchase it from Judon. On another occasion, Davis Jr. sought to purchase $200 worth of crack cocaine from Ross. Ross sold Davis Jr. nine rocks of crack cocaine for $180 and instructed Davis Jr. to purchase a tenth rock from Judon

-7-

for $20, which he did. Davis Sr. testified that both Ross and Judon were present at three of the four controlled purchases that he made. At one of those buys, Davis Sr. purchased five rocks of crack cocaine from Ross for $100, two of which Judon provided. When viewed in a light most favorable to the verdict, the Davises' testimony shows that Judon and Ross had, at a minimum, a tacit agreement to distribute crack cocaine. This evidence is therefore sufficient for a reasonable jury to have concluded beyond a reasonable doubt that an agreement existed between Ross and Judon to distribute cocaine.

## C.     Ross's and Judon's Motions for New Trials

We review a district court's disposition of a motion for a new trial for an abuse of discretion. *Peters*, 462 F.3d at 957. Where, as here, the motions assert that the verdicts are contrary to the weight of the evidence, "the [district] court need not view the evidence in the light most favorable to the government, but may instead weigh the evidence and evaluate for itself the credibility of the witnesses." *United States v. Huerta-Orozco*, 272 F.3d 561, 565 (8th Cir. 2001). The district court should grant the motion if the evidence weighs so heavily against the verdict that the district court believes that a miscarriage of justice may have occurred. *Id.* "Absent a clear and manifest abuse of discretion, we uphold the district court's ruling on a motion for a new trial." *Peters*, 462 F.3d at 957 (internal quotation omitted).

In seeking new trials, both Ross and Judon argue that but for the testimony of the Davises, no evidence supports their convictions, and they invite us to assess the credibility of the Davises. Judon also argues that he should receive a new trial because the district court erred in limiting cross-examination into the circumstances surrounding Davis Jr.'s prior conviction, primarily focusing on the district court's decision to exclude evidence of the sexual nature of that conviction.

While Ross and Judon present reasonable arguments challenging the credibility of the Davises, the Davises' testimony was corroborated by testimony from three Mason City police investigators and an F.B.I. agent. The Government also presented audio recordings of some of the controlled purchases, further corroborating the Davises' testimony. The district court was well-positioned to assess the Davises' credibility in making its rulings on both new trial motions. *See United States v. Gabe*, 237 F.3d 954, 961 (8th Cir. 2001) (declining to second-guess the district court's evaluation of witness credibility on a motion for a new trial). We see no abuse of discretion in the district court's determination that sufficient evidence supported the jury verdicts against Ross and Judon.

Judon also argues that the district court erred by limiting cross-examination of Davis Jr. We review a district court's decision to limit cross-examination for a clear and prejudicial abuse of discretion. *United States v. Haskell*, 468 F.3d 1064, 1072 (8th Cir. 2006). Judon asserts that the district court erred by excluding evidence of the sexual nature of Davis Jr.'s conviction. In *United States v. Ford*, 17 F.3d 1100, 1103 (8th Cir. 1994), we upheld an identical limitation in nearly identical circumstances, holding that it was not a clear and prejudicial abuse of discretion for the district court to exclude evidence regarding the sexual nature of the Government's primary witness's conviction. *Id*. at 1103-04. Judon also argues that the district court erred by limiting inquiry into the timing of Davis Jr.'s custody on the sexual assault charge relative to his cooperation and into the circumstances surrounding his subsequent plea. However, Judon does not identify in his briefs, nor does the record reflect, how the district court's limitation of cross-examination into these matters prejudiced him. Therefore, we conclude that the district court did not clearly and prejudicially abuse its discretion when it limited Judon's cross-examination of Davis Jr.

The district court did not abuse its discretion in finding that sufficient evidence supported the jury verdicts, and it did not abuse its discretion in limiting cross-

examination into the circumstances surrounding Davis Jr.'s prior conviction. We therefore affirm the district court's denials of Ross's and Judon's motions for new trials.

### D.    Sentencing

We review a district court's interpretation and application of the guidelines de novo, its factual findings for clear error, and any decision to depart from the appropriate guidelines range for abuse of discretion. *United States v. Mashek*, 406 F.3d 1012, 1017 (8th Cir. 2005). We review a district court's decision to grant a § 3553(a) variance for reasonableness, *id*., a review that is akin to abuse of discretion review. *United States v. Maloney*, 466 F.3d 663, 667 (8th Cir. 2006). Ross and Judon both challenge the district court's drug quantity findings. Judon also asserts that the district court erred by failing to find that he was a minor participant in the criminal activity. The Government appeals the district court's decision to vary from the guidelines by using a 20:1 ratio of crack to powder cocaine instead of the 100:1 ratio provided for in the guidelines.

### 1.    Drug Quantity Findings

We review a district court's drug quantity findings for clear error. *United States v. Allen*, 440 F.3d 449, 452 (8th Cir. 2006), *cert. denied*, --- U.S. ---, 127 S. Ct. 458 (2006). "[W]e will reverse a determination of drug quantity only if the entire record definitely and firmly convinces us that a mistake has been made." *Id*. (quoting *United States v. Coleman*, 148 F.3d 897, 902 (8th Cir. 1998)). At sentencing, a district court may base factual findings on a defendant's admissions in a proffer interview. *See United States v. Ingles*, 408 F.3d 405, 409 (8th Cir. 2005). Further,

[t]he trial court is entitled to estimate drug quantities where the amount actually seized fails to represent the scale of the offense if the preponderance of the evidence supports the quantities. The court may make a specific numeric determination of quantity based upon imprecise evidence, so long as the record reflects a basis for the court's decision.

*United States v. Roach*, 164 F.3d 403, 413-14 (8th Cir. 1998) (citations omitted). At sentencing, it is the Government's burden to prove drug quantities attributable to a defendant by a preponderance of the evidence. *United States v. Marshall*, 411 F.3d 891, 894 (8th Cir. 2005).

### a.    Ross

Ross challenges the district court's drug quantity findings and asserts that the Government failed to prove the amount of crack and powder cocaine attributable to him. The district court found Ross responsible for 396.48 grams of crack cocaine and 396.48 grams of powder cocaine. The district court based its findings on evidence presented at the sentencing hearing of Ross's admissions during a proffer interview with the Government in April 2005 . The notes recorded from that interview state, "Ross estimated that he bought and sold approximately a quarter ounce of cocaine (both powder and rocked) once a week for approximately 14 continuous months (September of 2003 - November of 2004.)" The district court read these admissions conjunctively, attributing to Ross the purchase and sale of a quarter ounce of crack cocaine and a quarter ounce of powder cocaine per week.[3] Ross objects to this reading, emphasizing that the report states that "he bought and sold approximately *a quarter ounce* of cocaine . . . once a week" (emphasis added).

---

[3]As noted in the presentence investigation report, a quarter ounce (7.08 grams) multiplied by 56 weeks (approximately 14 months) equals 396.48 grams.

Officer David Tyler was one of two officers present at Ross's proffer interview. During Ross's sentencing hearing, Officer Tyler testified:

> Q. Did [Ross] summarize approximately the time period that he was involved in selling cocaine, both powder and rock cocaine?
>
> A. Yes. He said basically from August of '03 to November of '04.
>
> Q. And did he say how often he sold – what kind of quantities he sold over the course of a week for those continuous 14, 15 months?
>
> A. He said he purchased about a quarter gram – a quarter ounce per week on the average over that time period.
>
> Q. When you say purchased, you mean bought and sold or just purchased and used?
>
> A. Bought and sold.
>
> Q. And was that powder and – was that powder cocaine, crack cocaine, or both?
>
> A. Both.

Transcript of Sentencing at 5.

Officer Tyler's testimony and the notes from Ross's proffer are ambiguous because they both support two different but reasonable readings. Ross reads this evidence to state that he admitted to trafficking only in one quarter ounce of cocaine per week during the relevant time period. The district court interpreted the evidence to mean that Ross trafficked in both a quarter ounce of crack cocaine and a quarter ounce of powder cocaine each week during the relevant time period. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985). Although we recognize the ambiguity and may well have agreed with Ross if we were reviewing this issue de novo, the entire record here does not "definitely and firmly"

-12-

convince us that the district court made a mistake in interpreting the testimony and calculating the quantity of drugs attributable to Ross. The district court's findings are therefore not clearly erroneous.

### b.     Judon

Judon also challenges the district court's drug quantity findings. The court attributed a total of 19.53 grams of crack cocaine to him. In reaching this amount, the district court found Judon responsible for two sales of crack cocaine to Davis Jr.: 2.28 grams on October 22, 2004 and 2.25 grams on October 26, 2004. The district court next attributed an additional five grams of crack cocaine to Judon on the conspiracy charge, even though the jury specifically found Judon responsible for less than five grams of crack cocaine in the conspiracy. Because a district court makes drug quantity findings using a preponderance of the evidence standard when applying the sentencing guidelines, it is not bound by the jury's quantity findings. *See United States v. McKay*, 431 F.3d 1085, 1094 (8th Cir. 2005), *cert. denied*, --- U.S. ---, 126 S. Ct. 2345 (2006), *and* --- U.S. ---, 127 S. Ct. 46 (2006). The district court then found Judon responsible for an additional ten grams of crack cocaine. Davis Jr. testified that before he began making controlled purchases in cooperation with the task force, he purchased crack cocaine from Judon on approximately ten occasions. On each occasion, he purchased anywhere from one gram up to an eighth of an ounce (3.54 grams) of cocaine. Judon argues that the district court's finding of the ten additional grams of crack cocaine was based on Davis Sr.'s testimony. The sentencing transcript is ambiguous about whose testimony the district court was actually crediting in attributing the additional ten grams of crack cocaine to Judon, but it is clear that Davis Jr.'s testimony in fact supports this finding. The finding itself therefore was not clearly erroneous. *See Roach*, 164 F.3d at 413-14.

Judon also argues that the district court double-counted by attributing to him the 2.28 and 2.25 grams from the October transactions as well as the five grams on the

conspiracy count. Even if we agreed, such an error would be harmless because removing the additional five grams from the total of 19.53 grams of crack cocaine attributed to Judon would not change Judon's ultimate advisory guidelines range. *See* U.S.S.G. § 2D1.1(c)(7) (correlating a base offense level of 26 to at least five grams but less than 20 grams of cocaine base). On this issue, there is no prejudicial error in the district court's drug quantity findings for Judon.

### 2. Judon's Role in the Offense

The district court also denied Judon's request for a two-level reduction for being a minor participant in the offense under § 3B1.2 of the guidelines. We review a district court's decision on a request for a mitigating role reduction for clear error. *United States v. Salazar*, 454 F.3d 843, 848 (8th Cir. 2006). A minor participant is one "who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2(b) cmt. n.5. It is the defendant's burden to show that he was a minor participant. *See Salazar*, 454 F.3d at 848. "The propriety of a downward adjustment is determined by comparing the acts of each participant in relation to the relevant conduct for which the participant is held accountable and by measuring each participant's individual acts and relative culpability against the elements of the offense." *Id.*

In ruling on Judon's request, the district court noted its familiarity with the trial of the case and stated, "The role [of Judon] was less than Mr. Ross but not substantially less in order to warrant a reduction for role in the offense." Transcript of Sentencing at 30. The testimony presented by the Government demonstrated that the Davises occasionally obtained drugs from Judon after being referred to him by Ross. On several occasions, Judon supplied drugs to the Davises when Ross had insufficient quantities. Though Ross may have been directly responsible for supplying more drugs, a fact accounted for by the district court's calculation of their base offense levels, Judon points to no evidence showing that he was less culpable than Ross in

-14-

distributing the amounts of cocaine actually attributed to him. *See Salazar*, 454 F.3d at 848. The district court therefore did not clearly err in denying Judon's request for a mitigating role reduction.

### 3.  Crack and Powder Cocaine Disparity

Finally, in the course of sentencing both Ross and Judon, the district court expressly relied on *United States v. Perry*, 389 F. Supp. 2d 278 (D.R.I. 2005), to reject the guidelines 100:1 ratio and apply a 20:1 ratio in treating crack cocaine relative to powder cocaine. In both cases, the district court applied what it described as a "*Booker* variance" under 18 U.S.C. § 3553(a) to recalculate each defendant's base offense level based solely upon a 20:1 ratio.

We recently addressed this issue in *United States v. Spears*, 469 F.3d 1166 (8th Cir. 2006) (en banc). There, as here, the district court categorically rejected the 100:1 crack-to-powder cocaine ratio in favor of a 20:1 ratio, also expressly relying upon the logic of *Perry*.[4] *Id*. at 1174. The holding of *Spears* is straightforward: "neither *Booker* nor § 3553(a) authorizes district courts to reject the 100:1 quantity ratio and use a different ratio in sentencing defendants for crack cocaine offenses." *Id*. at 1176. We hold that the district court here abused its discretion and committed reversible error when it varied under § 3553(a) based solely on its rejection of the 100:1 drug quantity ratio between crack and powder cocaine. Accordingly, we vacate the sentences of both Ross and Judon.

---

[4]The First Circuit's ruling in *United States v. Pho*, 433 F.3d 53 (1st Cir. 2006), abrogated *Perry* on this issue. *Spears*, 469 F.3d at 1173 n.5.

## III.  CONCLUSION

For the foregoing reasons, we affirm the district court's orders denying Ross's suppression motion, Judon's motion for judgment of acquittal, and Ross's and Judon's motions for new trials.  Because the district court improperly varied based solely on its rejection of the 100:1 crack-to-powder ratio prescribed by the guidelines, we vacate the sentence of each defendant and remand to the district court for resentencing in a manner consistent with this opinion.

_____