# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1624

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the Eastern |
| v. | * | District of Missouri. |
| | * | |
| Mary Love, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: December 13, 2007
Filed:  February 8, 2008

_____

Before BYE, ARNOLD, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

A jury convicted Mary Love of three counts of larceny within a special maritime and territorial jurisdiction of the United States and two counts of making a false statement to a federal agency. The district court[1] sentenced Love to 18 months' imprisonment on each of the five counts, to be served concurrently.  Love challenges the sufficiency of the evidence supporting her convictions.  We affirm.

_____

[1]The Honorable Donald J. Stohr, United States District Judge for the Eastern District of Missouri.

I.    Background

In light of the applicable standard of review, the following facts are recounted in the light most favorable to the verdict.  United States v. Honarvar, 477 F.3d 999, 1000 (8th Cir. 2007).  American Federation of Governmental Employees (the Union) is a union that represents federal employees.  Local 96 of the Union represents nurses and other employees in parts of the Veterans Affairs Medical Center in St. Louis, which is subject to the special maritime and territorial jurisdiction of the United States.  The Union appointed Mary Love president of Local 96 in January 1997, and the members of Local 96 later elected Love to that position for a term to extend through 2007.  Mary Love was the only full time officer of Local 96.  Starting in January 2001, Danna France served as Local 96's treasurer.

As president, Love was the chief executive of Local 96, and her duties included supervising all aspects of Local 96's activities.  Love received training from the Union on her fiduciary responsibilities as president of Local 96, which included making sure that financial reporting to the Department of Labor was accurate and that expenditures were approved by the membership as required.  Love was one of the required signatories on Local 96's checks, and she reviewed every Local 96 check before signing it.  Love also reviewed and certified as accurate the annual accounting forms required by the Department of Labor, known as LM-3 forms.  In 2003, Love received a salary, known as an allowance, from Local 96 of $350 per month.  Allowances for officers are required to be approved by the membership of Local 96, and there was no record of such authorization for Love's allowance.

Members of Local 96 complained to the Union about the financial management of Local 96.  In response, in early 2003, Michael C. Kelly, national vice president of the Union, requested Love provide the Union with financial records from Local 96. Love resisted complying with the Union's request.  When Love eventually provided the Union with the records, Kelly expressed concern to Love.  Kelly counseled Love

about the lack of membership meeting minutes generally and the lack of authorization from the membership for expenditures, including Love's allowance. Kelly also discussed with Love his concerns about the failure of Local 96 to provide documentation or receipts for Local 96's expenditures. Kelly advised Love that, although Local 96 could make loans to members or executive officers, the Union did not encourage the practice. Further, Kelly informed Love that the membership had to approve any loan and that Local 96 had to maintain a record of the approval.

In August 2003, Love began to take advances on her monthly allowance of $350 without the knowledge or approval of Local 96. By October 2003, Love had taken $4,500 in allowance advances, an amount equivalent to her total allowances for 2004, plus an extra allowance for May 2004. Love signed each allowance check. Love did not seek the approval of, or otherwise notify, either the membership or the executive board of Local 96 as to these advances. Including the advances, Love paid herself $13,902.51 in Local 96 checks in 2003.

Love filed for bankruptcy in December 2003. In her bankruptcy filings, she identified secured creditors claiming almost $79,000, which related in large part to a home mortgage, and unsecured creditors claiming $63,000. Love listed her $29,000 annual salary from the V.A. on her bankruptcy filings, but listed no income from Local 96.

Because she took all of her 2004 allowances in advance, even if Love was entitled to allowances, she should not have received any funds from Local 96 in 2004. However, she obtained $38,777 from Local 96 during that year. As part of a membership drive, Local 96 participated in a program called "Lunch and Learn" beginning in 2004. The Lunch and Learn program was designed to provide potential new members with information about the Union during lunches paid for by Local 96. Local 96 also provided a cash bonus to new members who joined Local 96 at the Lunch and Learn and to existing members who brought a new member to the function.

Love deposited in her personal account checks listed in the Local 96 financial ledger for Lunch and Learn expenses. Some of these checks were deposited into Love's personal account during months when Local 96 did not host any Lunch and Learn programs. Love diverted $9,700 of Lunch and Learn funds during 2004. In addition to the Lunch and Learn funds, Love took additional Local 96 money in 2004. After the board had approved per diem for board member travel, Love took $800 in excess of the approved amount of per diem for herself without additional authorization. Again without authorization, she used Local 96 funds to pay for the travel expenses of a friend accompanying her on a Union trip. Other Local 96 funds were transferred into Love's personal account without explanation. Love was not authorized by the Union, by the executive board of Local 96, or by the Local 96 membership to take any of these funds.

In 2005, Love increased her allowance to $500 per month. Again, there is no record of approval by the membership or the executive board for her allowance, let alone an increase in allowance. Beginning in April 2005, Love again advanced her expected allowances. By May 2005, Love had taken all of her allowance payments for 2005, as well as a second allowance payment for December 2004. By July 2005, she had taken all of her allowance payments for the year 2006, and by November 2005, she had taken her allowance payments through 2007, which was the end of her term as president. In addition, Love took $13,450 of Lunch and Learn funds without the knowledge or consent of Local 96 during 2005.

In 2003 and 2004, Local 96 completed and filed Department of Labor LM-3 forms. LM-3 forms are designed to inform the Department of Labor and a local's membership of the financial condition and activities of a local. The president of a local is required to sign and attest to the accuracy of the LM-3 form. Love reviewed and signed Local 96's LM-3 forms in 2003 and 2004.

The 2003 LM-3 form contained false information about Local 96's financial affairs. First, it stated Local 96 did not pay its employees any salaries or allowances. Second, it stated no employee was paid more that $10,000. Third, the form listed Love's allowances at $4,200, the equivalent of $350 a month for twelve months, an internal inconsistency with the statement that no Local 96 employee received an allowance. No other disbursements to Love were listed. The 2004 LM-3 listed total disbursements to Love as $5,700 and more than $84,000 as "other disbursements," without identifying the purpose or recipient of the funds.

The large amount of "other disbursements" listed on Local 96's LM-3 form for 2004 drew the attention of the Department of Labor, which initiated an audit. During the audit, Department of Labor investigators uncovered the financial information described above and asked Love about it. When asked about the advances on her allowance, Love admitted taking advances was wrong and stated she had not consulted the executive board about the advances. Love admitted that she took per diem above what was authorized for travel and that she had done so without the consent of Local 96's executive board. Love also confirmed that Local 96 paid for her friend's travel without authorization and that she had not repaid Local 96 for those expenses. Love was unable to explain the other transfers of Local 96 funds into her personal account. When questioned about the LM-3 form for 2004, Love admitted it was incorrect and acknowledged she had reviewed it before signing it. She also acknowledged that the concealment on the LM-3 forms prevented Local 96 members or the Department of Labor from knowing of the payments to her.

As a result of the Department of Labor investigation, a grand jury indicted Love and Local 96 treasurer Danna France for multiple counts of larceny within a special maritime and territorial jurisdiction of the United States and making a false statement to a federal agency. France pled guilty to one count of making a false statement, and Love proceeded to trial on all charges against her.

At trial, the government introduced evidence supporting the factual summary above. Love testified, denying she made any admissions to the Department of Labor investigators about any wrongdoing and providing explanations for the payments made to her from Local 96 funds. She claimed she did not review the LM-3 forms before they were filed. Love testified she had not intentionally or knowingly falsified either the 2003 or 2004 LM-3 forms, blaming any inaccuracies on Danna France.

The jury convicted Love on all counts. The district court sentenced Love to 18 months' imprisonment on each of the five charges, to be served concurrently. Further, the court ordered Love pay $69,725.80 in restitution to Local 96.

II.    Discussion

Love challenges the sufficiency of the evidence supporting her larceny and false statement convictions. In considering the sufficiency of the evidence, "[w]e view the evidence and all reasonable inferences therefrom in the light most favorable to the verdict, and we will reverse only if no reasonable jury could have found [Love] guilty." United States v. Tindall, 455 F.3d 885, 887 (8th Cir. 2006). This "very strict standard of review" poses a "high hurdle" for Love. United States v. Spencer, 439 F.3d 905, 913 (8th Cir. 2006) (internal quotations omitted).

A.    Larceny Convictions

Love was convicted of three counts of larceny within a special maritime and territorial jurisdiction of the United States, in violation of 18 U.S.C. § 661. To establish a violation of § 661, the government must prove that: (1) the defendant took and carried away the personal property of another; (3) the defendant intended to steal or purloin the property; and (3) the offense occurred within the special maritime and territorial jurisdiction of the United States. See 18 U.S.C. § 661; United States v. Spencer, 905 F.2d 1260, 1262 (9th Cir. 1990) (listing the elements of § 661).

Love contends there was insufficient evidence to support her larceny convictions. The crux of her argument is that the government failed to prove she intended to steal any funds from Local 96. We disagree. "Intent frequently cannot be proven except by circumstantial evidence; the determination often depends on the credibility of witnesses, as assessed by the factfinder." United States v. Henderson, 416 F.3d 686, 692 (8th Cir. 2005). "[T]he jury is entitled to scrutinize and make reasonable inferences from defendant's conduct and from all facts surrounding the incident[s] in question." United States v. Peters, 462 F.3d 953, 957 (8th Cir. 2006) (internal quotations omitted). The government provided ample circumstantial evidence of Love's intent. The Union trained Love on how finances were supposed to be managed, and yet Love's actions were contrary to the training. By taking per diem above what she was entitled to and by using Local 96 funds to pay for travel by a friend, Love demonstrated a pattern of taking Local 96 funds without authorization. Local 96's membership or executive board did not authorize her allowance, her allowance increase, or any advances on an allowance. Further, Love deposited checks identified for a specific Union purpose—the Lunch and Learn programs—into her own account. Love's admissions to the Department of Labor investigators, in contrast to her denials at trial, also show her state of mind. A reasonable jury could disregard Love's explanations about her irregular financial transactions as self-serving, in light of the substantial evidence put forth by the government. See United States v. Headbird, 461 F.3d 1074, 1077 (8th Cir. 2006). There was more than sufficient evidence for a reasonable jury to conclude Love committed larceny as charged in the indictment.

B.     False Statement Convictions

Love was convicted of two counts of making a false statement to a federal agency, in violation of 18 U.S.C. § 1001. The first conviction was for stating on Local 96's 2003 LM-3 form that she received only $4,200 in allowances during 2003, when she took a total of $13,902.51 from Local 96 that year. The second conviction

was for stating on the 2004 form that she received only $5,700 in allowances during 2004, when she took a total of $38,777 from Local 96 that year. "To establish a violation of 18 U.S.C. § 1001, the Government must prove that: (1) the defendant made a statement; (2) the statement was false, fictitious or fraudulent as the defendant knew; (3) the defendant made the statement knowingly and willfully; (4) the statement was within the jurisdiction of a federal agency; and (5) the statement was material." United States v. Rice, 449 F.3d 887, 892 (8th Cir. 2006) (internal quotations omitted).

Love contends there was insufficient evidence to support her false statement convictions because the government failed to prove that she knowingly and willfully made the false statements included in the LM-3 forms for 2003 and 2004. She argues she signed the LM-3 forms without reviewing them and was unaware that they incorrectly listed her allowances and distributions from Local 96. We conclude there was sufficient evidence to support her false statement convictions. The evidence at trial demonstrated Love signed the LM-3 forms for both 2003 and 2004. The government presented evidence that Love told Department of Labor investigators that she did, in fact, review the forms. She also admitted the consequences of the false statements on the forms: payments to her would go undetected. As the finder of fact, the jury was free to give weight to these admissions and disregard Love's denials at trial. Credibility assessments are for a jury to make, United States v. Piwowar, 492 F.3d 953, 956 (8th Cir. 2007), and if the jury determined the Department of Labor witnesses were more credible than Love, that determination is "virtually unassailable on appeal," United States v. Rodriguez, 414 F.3d 837, 845 (8th Cir. 2005). There was more than sufficient evidence for a reasonable jury to find Love guilty of the false statement offenses with which she was charged.

We affirm the judgment of the district court.

_____